**IN THE UNITED STATES DISTRICT COURT**
<u>**FOR THE DISTRICT OF MARYLAND**</u>

| | | |
|---|---|---|
| **ANNA MARIE ZACKRIE**, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | **Civil No. RWT  04-1864** |
| | * | |
| | * | |
| **LOCKHEED MARTIN, CORP.** | * | |
| | * | |
| Defendant. | * | |
| | ***** | |

**OPINION**

On June 15, 2004 the plaintiff, Anna Marie Zackrie ("Zackrie") filed a complaint against the defendant, Lockheed Martin Corporation ("Lockheed Martin").  The complaint asserted statutory causes of action under: (1) Title VII,  42 U.S.C. § 2000(e), (2) the Age Discrimination in Employment Act ("ADEA"), 29  U.S.C. §§ 621, et seq., and (3) 42 U.S.C. § 1981 respectively. Zackrie joined these statutory causes of action with claims for breach of contract and the tort of intentional infliction of emotional distress under Maryland law.  The case  proceeded through extensive discovery and pending before the court is defendant's motion for summary judgment that was filed on February 20, 2006.  The Court heard the arguments of counsel on June 26, 2006, and now rules on the defendant's motion.

**FACTUAL BACKGROUND**

Zackrie is a 55-year-old African-American woman who lives in the District of Columbia and has worked at Lockheed Martin or its corporate predecessor (a division of IBM purchased by Lockheed Martin) for over 33 years.  Lockheed Martin is a large, publicly-traded corporation

1

headquartered in Maryland that manufactures aeronautics, space systems, and electronic equipment for the government and other private entities. Zackrie began her tenure as an associate computer programmer. She has worked continuously on a program called Integrated Submission and Remittance Processing (ISRP), a process designed to help Lockheed Martin's client, the Internal Revenue Service, process returns efficiently.

In 2001, Zackrie was promoted from Advisory Programmer to Staff Software Engineer Manager at a pay level of 4 on the corporate pay scale. In July, 2002 there began a series of events that ultimately led to the filing of this complaint.

In July 2002, William MacDonald, a white male, became Zackrie's manager. MacDonald immediately raised Zackrie's pay to Level 5, and subsequently gave her a performance rating of "Successful Contributor." Although this is not a negative review in the parlance of Lockheed Martin, it is a step below the "High Contributor" ratings that Zackrie had received prior to that time.[1] Zackrie received the same rating in her final evaluation for 2002. The other managers on the team MacDonald supervised received higher ratings. Zackrie was the only African American among these five managers.[2] As a result of her performance review, Zackrie received a 2.5 percent increase in salary for her work in 2002, while other managers received higher pay raises.

In July 2003, Zackrie received an email from MacDonald notifying her of a reclassification of her job position from Software Engineering Manager to Systems Engineering Manager. Defendant contends that this reclassification was based on a change in management structure and

---

[1] "Successful Contributor" is basically a rating of 3 out of 5. "High Contributor" is a rating of 4 out of 5. (Opp. Ex. 5.) In layman's terms, "Successful Contributor" is the equivalent of a "C" grade while a "High Contributor" rating is the equivalent of a "B" grade.

[2] The other managers were: two white women, a male of East-Indian descent, and a white male (Riley Harpool).

a decision by the company to reduce the number of pagers utilized.  MacDonald testified that this reclassification was authorized by Lockheed Martin's human resources department.  Zackrie contests this rationale and alleges that this reclassification was a demotion.  To support her claim that this was a demotion, Zackrie notes that as a Systems Engineering Manager, she was not authorized to carry a pager that would notify her of customer problems.  These were given to Software Engineers, who were the first line of response in such situations.  Lockheed Martin provides additional compensation to employees for carrying the pagers.  Thus, Zackrie alleges that she could not receive additional compensation. Lockheed Martin, however, has provided undisputed evidence that MacDonald offered to provide Zackrie's department with two pagers, but that she chose to give them to subordinates.

Beginning in or about May of 2003, Zackrie contends that MacDonald began a pattern of discrimination, abuse, and verbal harassment based on Zackrie's race and age.  Zackrie states that MacDonald frequently berated her and ridiculed her ideas in front of subordinates and customers.  Zackrie also complains that MacDonald excluded her from meetings and team-building activities and did not allow her to communicate directly with customers.  Zackrie contends that MacDonald told her she needed to rotate out of the program in order to bring in new people.  Zackrie also asserts that MacDonald forwarded her resume to other Lockheed offices,  including overseas divisions, without her consent.

It is fairly obvious based upon the record in this case that the relationship between MacDonald and Zackrie was not one made in Heaven. In July 2003, Zackrie, concerned with about the situation with MacDonald, went to MacDonald's supervisor, James Myrick.  Myrick, an African-American manager, listened to Zackrie's complaints and conducted an investigation.  On

August 21, 2003, Zackrie filed a charge of discrimination with the Maryland Commission on Human Rights and the United States Equal Employment Opportunity Commission.

On September 7, 2003, Myrick issued a report concluding that McDonald and Zackrie had different communication styles leading to problems between the two of them. He asked both of them whether they could continue to work with each other and they both responded in the affirmative. Within two months of Myrick's report, Zackrie received a 2.5% salary increase (from $112,943 to $115,767) which took effect on May 5, 2004. A right to sue notice was issued by the EEOC on March 17, 2004 and Zackrie filed her complaint in this court on June 15, 2004.

At some point before Zackrie filed her discrimination charge, MacDonald began to document the days that Zackrie missed from work. In spite of Myrick's intervention, MacDonald and Zackrie's communications problems continued; a harsh conversation took place between the parties in December 2003. In late December 2003, Zackrie took a medical leave of absence for what she called "work related stress." Deone Viergutz replaced MacDonald as Zackrie's supervisor in February, 2004, but Zackrie's difficulties with her supervisors at Lockheed Martin did not end with this personnel change. Riley Harpool, ("Harpool"), one of Zackrie's former peers when she worked for MacDonald, was promoted to deputy program manager. Zackrie alleges that Harpool acted in a discriminatory manner toward her with respect to her age, referring to her as "Grandma" in one

conversation.[3]

According to the record, difficulties continued after the filing of the complaint in this court. In February, 2005, Harpool allegedly yelled at Zackrie during a staff meeting and was counseled by a supervisor afterward for his behavior during the meeting. There was another flair-up between Harpool and Zackrie at a meeting a few months later, during which Harpool slammed his hand down on a table and yelled something to the effect of, "One of us would like to finish a statement, Goddamit!" Harpool received a written warning for this behavior. Harpool subsequently sent an email to supervisors characterizing Zackrie as bullheaded and "a cancer." Zackrie has testified that she felt afraid of Harpool after this incident. After this incident, Zackrie visited her doctor, who advised her to take a month-long leave of absence.

## THE PLAINTIFF'S CLAIMS

### Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)). A dispute

---

[3] The following exchange took place at Harpool's deposition:
  Q: Did you refer to her as a nice grandma?
  A: Yes. Yes, I did.
  Q: Why did you refer to her as a nice grandma?
  A: I think Maria is a great grandma. You should hear her talk about her little grand baby. It's just wonderful to see her light up when she talks about her. I think Maria is a great grandmother. She has got, or had anyway, pictures all over her office. I'm not sure where her office is now. Anyway, she had pictures of the grand baby and she talks about the grand baby. That sounds like great grandmother to me.

over a material fact is "genuine" only if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. Anderson, 477 U.S. at 248-49. "The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." Felty v. Grave-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (citing Celotex, 477 U.S. at 323-24).

In the employment context, the standards for summary judgment mesh with the McDonnell Douglas burden-shifting scheme, a framework applicable to Zackrie's discrimination claims. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Hux v. City of Newport News, Va., 451 F.3d 311, 315 (4th Cir. 2006). In evaluating whether the plaintiff has met her McDonnell Douglas burden, the court must apply the standards for summary judgment. For example, in a situation where the employer satisfies its burden to provide a non-discriminatory explanation for the challenged conduct, a plaintiff *cannot* prove that the employer's rationale was pretextual by focusing only on "minor discrepancies that do not cast doubt on the explanation's validity," for that would not create a "genuine dispute" consistent with Rule 56. Hux, 451 F.3d at 315. Nor can the plaintiff meet her burden by "raising points that are wholly irrelevant to it," for that would not amount to a material fact under the standard for summary judgment. Id. Thus a plaintiff cannot rebut an employer's decision "on the basis of a single evaluative factor artificially severed from the employer's focus on multiple factors in combination." Id. A plaintiff could, however, prove pretext by showing that she "was better qualified, or by amassing circumstantial evidence that otherwise

6

undermines the credibility of the employer's stated reasons." <u>Heiko v. Columbo Savings Bank</u>, 434 F.3d 249, 259 (4th Cir. 2006).

### A. Statutory Discrimination Claims

Zackrie has alleged six discrimination claims under three statutes: 42 U.S.C. § 1981, Title VII (42 U.S.C. § 2000(e)), and the ADEA (29 U.S.C. § 623).

#### 1. <u>42 U.S.C. § 1981 Racial Discrimination in Compensation (Count I)</u>

Without direct evidence of discrimination, four elements must be established under the <u>McDonnell Douglas</u> burden-shifting framework for a *prima facie* case of discrimination in compensation pursuant to 42 U.S.C. § 1981. These elements are: (1) the plaintiff is a member of a protected class, (2) the plaintiff's job performance was satisfactory, (3) the plaintiff has suffered an adverse employment action with respect to compensation, and (4) similarly-situated employees outside the protected class received more favorable treatment. <u>White v. BFI Waste Servs., LLC</u>, 375 F.3d 288, 295 (4th Cir. 1995) (citing <u>McDonnell Douglas</u>, 411 U.S. at 802). Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to prove a non-discriminatory purpose that led to the challenged employment action. <u>Evans v. Technologies Applications & Service Co</u>, 80 F.3d 954, 959 (4th Cir. 1996). If the employer provides a sufficient, non-discriminatory explanation, the burden shifts back to the plaintiff to prove the employer's explanation a mere pretext. <u>Id.</u> At all times, however, the plaintiff "bears the ultimate burden of proving that the employer intentionally discriminated against her." <u>Evans</u>, 80 F.3d at 959.

In this case, Zackrie has failed to allege any direct evidence of discrimination, hence the Court applies the <u>McDonnell Douglas</u> framework to her claim against Lockheed Martin. Zackrie satisfies the first factor because she has demonstrated that she is a member of a protected class, both

as a racial minority and because of her gender. She also was a satisfactory employee, as evidenced by her performance ratings of "Successful Contributor," and thus satisfies the second factor. However, Zackrie fails to establish the third and fourth elements.

Zackrie alleges that receiving a "Successful Contributor" rating in her evaluations amounts to an adverse employment action. This action, even when considered in light of the other instances of conflict with her supervisors such as being denied face-time with customers and being insulted in front of colleagues and customers does not amount to an adverse employment action in the Fourth Circuit under § 1981. Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004) (holding that instances where an employer allegedly yelled at employee, told her she was a poor manager, gave her poor performance evaluations and chastised her in front of customers did not amount to an adverse employment action).

Furthermore, Zackrie has failed to show how those ratings constituted an adverse action because she has not alleged, nor presented any evidence to show that those ratings caused her to receive a decrease in salary. This Court has held that a negative performance review is not an adverse employment action if it does not negatively impact an employee's pay. Pulley v. KPMG Consulting, Inc., 348 F.Supp. 2d 388, 395 (D.Md. 2004), aff'd, 2006 U.S. App. LEXIS 13686 (4th Cir. 2006). To the contrary, Zackrie received a number of increases in pay during the time in which her disputes arose with MacDonald. These actions create a powerful inference that MacDonald's subsequent behavior was not motivated by discrimination. Evans v. Techs. Applications & Servs. Co., 80 F.3d 954, 959 (4th Cir. 1996) (finding a "powerful inference" against discrimination where the person accused of discrimination is the same person who decided to hire the employee). Zackrie's "own naked opinion, without more, is not enough to establish a *prima facie* case of

8

discrimination." Id. Similarly, Zackrie's position regarding the fourth element, that similarly-situated employees outside of her protected class received more favorable treatment, is unsupportable. Zackrie points to a Seventh Circuit case for the proposition that a disparate raise is the equivalent of a denied raise. Hildebrandt v. Illinois Dept. of Nat'l Res., 347 F.3d 1014 (7th Cir. 2003). Even if the Court were to assume that case controls in this circuit, the facts of that case are quite different than Zackrie's. Hildebrandt was able to establish the comparability of her peers. Id. at 1031. Unlike Hildebrandt, however, Zackrie has not shown that she received a lower raise than "similarly situated" employees. To be "similarly situated," Zackrie must show that those receiving higher salaries than she received were "nearly identical in all respects." Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2d Cir. 1997) (citing Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir.1992)). Zackrie does not identify a single "similarly situated" employee that the Court can compare her to because as Zackrie points out, no other manager on her team received a performance rating of "Successful Contributor." Although she complains that other managers were given better performance evaluations, and hence received higher salaries, she does not allege that these higher performance evaluations were undeserved, or that she deserved a higher performance evaluation. Because none of the other supervisors received the same performance evaluation as Zackrie, they are not "similarly situated" employees to whom a comparison can be made. Thus, Zackrie fails to establish the fourth element of her *prima facie* case. In short, Zackrie has not shown anything other than the existence of a bad working relationship between herself and certain other employees.

    a. Job Classification

Even if Zackrie had sufficiently proved a *prima facie* case, she nevertheless fails to rebut the evidence proffered by Lockheed Martin in support of its employment decisions in accordance

with the <u>McDonnell Douglas</u> framework. Zackrie alleges that she was discriminated against when she was reclassified as a Systems Engineering Manager from a Software Engineering Manager. Lockheed Martin, however, has provided detailed reasons why the classification chosen for Zackrie was appropriate given the duties and responsibilities she performed. A position title beginning with the term "Software" is more appropriate for an employee who actually writes computer code, whereas a title beginning with "Systems" is more appropriate for employees who operate at the macro level. Lockheed Martin has also provided evidence that these decisions were made by the human resources department. These assertions constitute a sufficient, nondiscriminatory explanation for the classification decision, and Zackrie has failed to meet her burden of showing that the proffered reasons were pretextual.

In connection with her job reclassification, Zackrie also contends that she was discriminated against because she was not allowed to carry a pager. Lockheed Martin has explained that it made a business decision to reduce the number of pagers utilized, and to assign pagers only to the first response team, a team to which Zackrie was not assigned. Further, Lockheed has provided evidence that MacDonald provided Zackrie's department with two pagers, but that Zackrie chose to give them to her subordinates. Zackrie has not put forth any evidence to challenge Lockheed on these statements and thus has not met her burden of proof in demonstrating that Lockheed's rationale was pretextual with respect to the assignment of pagers.

     b.  Performance Evaluations

Zackrie also suggests that her rating of "Successful Contributor" was a pretext for discrimination because she was the only manager to receive such a rating. Zackrie's performance evaluations, however, are consistent, and they reflect that Zackrie did have issues with cost

management. Zackrie has failed show that she was somehow "better qualified" than the other managers who received higher ratings, nor has she amassed "circumstantial evidence that otherwise undermines the credibility" of Lockheed Martin's reasons for the performance assessment results. Id. In attempting to rebut Lockheed Martin's decisions, Zackrie repeatedly makes references to her own deposition testimony. The Fourth Circuit has made it very clear than an employee must refute an employer's explanation by a preponderance of the evidence. Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1989). Zackrie's statements under oath that she disagrees with Lockheed Martin's explanation is ordinarily not sufficient to satisfy this standard of proof. Notably absent from the evidence that Zackrie presented is any indication that her cost management skills were in fact up to par and that the ratings given to her indicating that she needed to improve these skills were false. Thus, Zackrie has failed to satisfy her burden of proof to rebut these legitimate nondiscriminatory reasons for her performance rating.

In sum, even if the Zackrie had made out a *prima facie* case of discrimination, the legitimate nondiscriminatory reasons given by the defendant more than adequately put the burden back on the plaintiff to prove that the assigned reasons are not legitimate or are a pretext, a burden she simply failed to meet.

    2. 42 U.S.C. § 2000e Disparate Treatment Due to Gender and Race (Count IV)

In addition to discrimination under 42 U.S.C. § 1981, Plaintiff also alleges disparate treatment and discrimination due to her race and gender under Title VII. The relevant portion of the statute states that, "[i]t shall be an unlawful employment practice for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.

11

§ 2000e -2(a)(1). The same analysis applies to Title VII discrimination claim as outlined above for 42 U.S.C. § 1981. To prove a *prima facie* case under Title VII, Zackrie must show that she is a member of a protected class, that she performed her job at a satisfactory level, that she suffered an adverse employment action with respect to compensation, and that similarly situated employees not in the protected class received more favorable treatment. White, 375 F.3d at 295.

As noted previously, Zackrie satisfies the first two elements as a racial minority and a woman who performed satisfactorily. However, she again fails to show a *prmia facie* case because she has not shown an adverse employment action with respect to compensation. Zackrie has stated that other managers supervised by MacDonald received slightly higher raises than she.[4] But she has not offered any proof that those who received higher salaries were similarly situated employees. As discussed in the context of Zackrie's § 1981 discrimination in compensation claim, all of the managers that received greater salary increases received better performance evaluations. Further, even assuming this is sufficient for the fourth element of a *prima facie* case, Zackrie has not overcome her burden to demonstrate that Lockheed Martin's legitimate business explanation for her job reclassification, and the results of her performance evaluations were pretextual. Lockheed has explained that the other managers received greater salary increases because they received better scores on their performance evaluations.

In addition, for the purposes of Title VII, the timing of Zackrie's complaint is significant with regard to her reclassification. Zackrie's reclassification took place more than 300 days prior to the filing of the complaint with the EEOC. Under 42 U.S.C. § 2000e-5(e), an employee can

---

[4] Zackrie provided an exhibit that other managers received 3.8 - 5.88% increases whereas she received only a 2.5% increase in salary.

complain of discrimination only if it occurred within the 180-day period preceding the filing of the EEOC charge, or a 300-day period if the employee has also filed a charge with the appropriate state or local agency. The 300-day period is applicable in Zackrie's case because she filed a complaint with the Maryland Commission on Human Rights. Zackrie does not contest that this claim is time barred under the statute. Thus, even if Zackrie could satisfy the burden of proving that Lockheed's purported business rationale was a pretext for discriminatory treatment, her claims relating to reclassification of her position are barred under this statute of limitations.

   3. Retaliation Under 42 U.S.C. § 1981 & 42 U.S.C. § 2000e (Counts II and V)

In order to establish a prima facie claim of retaliation, Zackrie must prove three elements: (1) that she engaged in protected activity; (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity and the adverse employment action. Williams, 871 F.2d at 457. Similar to the analysis for discrimination in compensation, if Zackrie demonstrates these elements, Lockheed Martin can rebut with a showing of a legitimate business purpose for its actions. Id. Zackrie then bears the burden of proving Lockheed's explanation a pretext for discrimination. Id.

Zackrie's protected activity was the filing of her discrimination claim. The facts, however, do not support that there has been an adverse employment action rendered against her. Zackrie argues that she was subjected to inferior performance evaluations and that after she filed her complaint with the EEOC, her employer began tracking her absences. In Pulley v. KPMG Consulting, Inc., a negative performance review was found not to be an adverse employment action if it does not impact an employee's pay. 348 F.Supp. 2d at 395. There were four evaluations contested in this case. Two of the evaluations were made before the complaint of discrimination was

filed, and two were made subsequent to the claim. In all four evaluations, Zackrie received the same ratings. Zackrie's complaints of verbal abuse also involve incidents that took place both before and after she filed her complaint. Thus it is difficult to pinpoint anything that would indicate that Lockheed Martin and its employees took retaliatory actions against Zackrie. Given these facts, it is difficult, if not impossible, to find a causal link that would satisfy the third prong of the test. Thus, Zackrie has not made out a prima facie case of retaliation.

In a decision rendered this term, the Supreme Court announced a new legal standard for evaluating retaliation claims, rectifying a split among the circuit courts. Burlington Northern & Santa Fe Railway Co. v. White, No. 05-259, 548 U.S. ___ , 126 S.Ct. 2405 (2006). The circuit split at issue in Burlington Northern involved two issues: (1) whether and to what extent the challenged actions must be related to employment or the workplace, and (2) how harmful the action must be to constitute retaliation. It is this second issue that is directly relevant to Zackrie's case.

In Burlington Northern, the Supreme Court noted that the "anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces injury or harm." Id. at slip op. at 12-13. Rejecting the formulation of the District of Columbia and Seventh Circuits, the Court held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (internal citations omitted). As the court noted, the purpose of the statute is to ensure that employers do not deter employees from reporting employer wrong-doings out of a fear that they will suffer an adverse employment action. Id.

Applying this objective standard to Zackrie's case, it is clear that her claim does not satisfy the burden of proof required. Zackrie's areas for improvement were documented by her supervisors.

14

She has failed to challenge this documentation as incorrect. More importantly for this claim, she has also failed to show how these acts relate to her complaint of discrimination; four of the seven acts complained of occurred prior to her complaint. She has also complained of her supervisor's decision to track her absences; however, this is a legitimate practice. It is reasonable that a supervisor would keep track of an employee's absences, particularly if someone is missing one-third of the time that she is supposed to be at work. A prudent employer would want to keep track of that kind of a problem so that it could be addressed at the appropriate time. The incidents complained of by the plaintiff are not such that they would have dissuaded a reasonable employee from making a charge of discrimination. Accordingly, Zackrie has not met her burden to show that her employer's actions would have deterred a reasonable employee from making or supporting a charge of discrimination.

     4. <u>Hostile Work Environment Under 42 U.S.C. § 2000e & 29 U.S.C. § 623 (Counts III & VI)</u>

Plaintiff has also asserted hostile work environment claims under Title VII and the ADEA. To state a hostile work environment claim based on race or age discrimination, Zackrie must demonstrate that: (1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. <u>Bass v. E.I. Dupont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003) (citing <u>Causey v. Balog</u>, 162 F.3d 795, 801 (4th Cir.1998)); <u>see also</u> <u>Crawford v. Medina General Hosp</u>., 96 F.3d 830, 834-35 (6th Cir. 1996) (finding that the ADEA permits an action for hostile work environment on the basis of age and listing the same factors to determine the claim). In order to determine whether the harassment rises to the level necessary to alter the conditions of employment,

a court is required to consider the totality of the circumstances. Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). Relevant factors in this analysis may include the frequency and severity of the discriminatory conduct; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work performance, and whether the conduct results in psychological harm. Id. If the plaintiff provides evidence that the employer's harassment has altered the conditions of her employment, the employer can avoid liability if it shows that it: (1) exercised reasonable care to correct promptly any harassing behavior, and (2) that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998).

The plaintiff relies upon seven incidents occurring over a 22-month period to demonstrate a hostile work environment. Having reviewed those incidents, it is clear that Zackrie and some other employees of the defendant did not get along. But it is impossible to conclude that the incidents described by her are sufficiently severe or pervasive to meet the standards employed by the Supreme Court and the Fourth Circuit in evaluating a hostile work environment. See Faragher, 524 U.S. at 807; Spriggs, 242 F.3d at 183-84. Zackrie has simply failed to show that her employer took any action as a result of her race, and thus fails to prove any of the elements required to demonstrate a hostile work environment with respect to race under Title VII.

With respect to her age, as noted in footnote 4 of this opinion, one example that Zackrie sets forth of purported age discrimination was an incident where Riley Harpool called her "grandma." It is difficult to find that alone or in connection with the other incidents sufficient to create a hostile work environment, particularly given the plausible nondiscriminatory nature in which it was explained. Zackrie has also complained of several internal emails that were sent but not brought to

16

her attention until after this case was filed. These emails can hardly serve as the basis for a claim given this timing, and these emails do not constitute sufficient evidence under the totality of the circumstances test set forth by the Supreme Court. Harris, 510 U.S. at 23. Some of these emails were essentially complaints detailing the difficulties that people had in supervising Zackrie. Neither these emails, nor the reference to Zackrie as "grandma" are sufficient to provide necessary support for the hostile work environment claims.

The Supreme Court has cautioned that Title VII should not be construed as a "general civility code." Faragher, 524 U.S. at 778. While some of these incidents are regrettable, they do not rise up to the level of a hostile work environment enunciated by the Supreme Court or the Fourth Circuit. See generally Faragher, 524 U.S. at 775; Spriggs, 242 F.3d at 179. There is nothing in this record to indicate that the incidents that occurred were based on race or gender or age. Significantly, when discussing the situation with James Myrick, MacDonald's African-American supervisor, Zackrie did not couch her complaints as race, age or gender discrimination. As appropriately identified by Myrick, the incidents complained of in this case are clearly the result of disagreements and differences in the styles of communication. Thus the Court rules in favor of the defendant with respect to Counts III and VI of the plaintiff's complaint.

### B. Maryland State Law Claims

In addition to her statutory claims, Zackrie has also alleged two counts under Maryland law. Count Seven asserts a cause of action for intentional infliction of emotional distress. The allegations in the complaint are insufficient as a matter of law to state a cause of action for intentional infliction of emotional distress. Under Maryland law, a plaintiff must establish four elements to have a claim for intentional infliction of emotional distress: 1) that the defendant's conduct was intentional or

17

reckless; (2) that the conduct was extreme and outrageous; (3) that there was a causal connection between the wrongful conduct and the emotional distress; and (4) that the emotional distress was severe. Abrams v. City of Rockville, 88 Md. App. 588, 597-598 (1991). Zackrie has failed to allege facts to demonstrate that the actions of her employer were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Harris v. Jones, 281 Md. 560, 567 (1977). Without this essential element, Zackrie has failed to state a claim for intentional infliction of emotional distress under Maryland law. At argument, the plaintiff did not oppose Lockheed Martin's arguments on this issue. Accordingly, summary judgment will be entered in favor of the defendant on Count Seven.

In Count Eight of the complaint, the plaintiff argues that Lockheed Martin breached an employment agreement. Defendant asserts that there is no employment agreement upon which this claim can be based. The plaintiff does not oppose this position and accordingly, summary judgment will be entered in favor of the defendant on Count Eight.

## **CONCLUSION**

As set forth in this opinion, defendant's Motion for Summary Judgment is granted for all claims because there are no genuine issues of material fact that could lead a reasonable fact-finder to find in favor of Zackrie's claims. Adhering to the concepts of materiality and genuineness are imperative to ensure that employers, not courts, are the "decision makers of last resort in personnel matters." Hux, 451 F.3d at 315 (citing Jiminez v. Mary Washington Coll., 57 F.3d 369, 377 (4th Cir. 1995)). As Judge Wilkinson stated in Hux, "[d]uty-bound though we are to examine employment decisions for unlawful discrimination, we are not cloaked with the authority to strip

employers of their basic business responsibilities." Id.

With respect to Count 1, Zackrie's claim of racial discrimination under 42 U.S.C. § 1981, and Count 4, Zackrie's claim of disparate treatment under Title VII, defendant's motion is granted because plaintiff has not demonstrated a prima facie case, and, in the alternative, has not satisfied her burden of proof to overcome defendant's legitimate business explanation for the employment action in question.  Further, all arguments under Title VII pertaining to Zackrie's job reclassification are barred by the statute of limitations contained in 42 U.S.C. 2000e-5(e).

With respect to Count 2, Zackrie's claim of retaliation in violation of 42 U.S.C. § 1981, and Count 5, Zackrie's claim of retaliation under Title VII, defendant's motion is granted because plaintiff has failed to offer facts sufficient to demonstrate a prima facie case.  Zackrie also has failed to satisfy the Supreme Court's newly-announced standard for retaliation cases.

With respect to Count 3, Zackrie's claim of a hostile work environment under Title VII, and Count 6, Zackrie's claim for a hostile work environment under the ADEA, defendant's motion is granted because the incidents complained of fail to rise to the level of a hostile work environment as articulated by the Supreme Court and the Fourth Circuit.

With respect to Count 7, Zackrie's claim for intentional infliction of emotional distress, defendant's motion is granted because Zackrie has failed to state a claim under Maryland law. Finally, with respect to Count 8, Zackrie's claim for breach of contract, defendant's motion is granted because there is no underlying employment contract on which to base such a claim.

A separate order follows.

>                     /s/
>          ROGER W. TITUS
>      UNITED STATES DISTRICT JUDGE